
EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

KATHLEEN KITTERMAN, ANNA CRONIN,
CORRIE BALL, MARVIN BALL,
MARGARET BROGAN and EVAN JONES,

    Plaintiffs,

v.                                   Case No. 2:12cv146

CLAUDIO TOVAR-GUZMAN,
FORTINO GARCIA AND SONS HARVESTING, INC.
and KUZZENS, INC.,

    Defendants.

## KUZZENS, INC.'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

The undersigned states that upon information and belief, the following answers to interrogatories are true and correct.

                                                 KUZZENS, INC.

                                                 By *Maria J[ohn]* [signature]

COMMONWEALTH OF VIRGINIA       State of Florida

CITY OF _____, to-wit:            County of: Collier

Subscribed and sworn to before me this *12* day of *November*, 2013.

                                               *Cynthia D. Dana* [signature]
                                                  Notary Public

My Commission Expires: _____

[Notary Seal:
CYNTHIA D. DANA
MY COMMISSION # DD 992045
EXPIRES: May 13, 2014
Bonded Thru Notary Public Underwriters]

Maria Jimenez is personally known to me.

1. State the full name, residence, occupation, employers address, date and place of birth, and social security number for every person answering these or any part of these interrogatories.

**ANSWER:** William Diaz, Lipman Produce, Safety Compliance Manager, 315 E. New Market Road, Immokalee, Florida 34142 assisted counsel in gathering information responsive to interrogatories.

2. Name and identify every person you expect to call as an expert witness at trial, providing each individuals name, address, occupation, and the substance of the facts and opinions the expert is expected to testify including a summary of the grounds for each opinion.

**ANSWER:** Decisions about expert witnesses have not been made at this time. Defendant may call any of plaintiffs' treating healthcare providers to testify on the subject of plaintiffs' physical and mental health, including, but not limited to, diagnoses, prognoses, and causation. Defendant has not communicated with plaintiffs' healthcare providers regarding their testimony but anticipates that the testimony will be in accordance with the medical record.

3. If Claudio Tovar-Guzman ever worked for, served, supported, or furthered the business duties, or purposes of Kuzzens, Inc. (hereinafter "Worked") identify the location where he Worked and the corresponding dates on which he Worked, specifying for each period of time that he Worked, when he was hired and when his employment terminated, his employee identification number, the capacity in which he Worked, giving a description of his duties and the name of his employer and supervisor (and his employer if different from Tovar-Guzman's).

**ANSWER:** See Bates-stamped numbered documents Kuzzens 00001-00096, produced.

4. Identify any document that Kuzzens has in its possession that showed when and where Tovar-Guzman Worked for Kuzzens, the amount h was paid while there, the entity who paid him

3

for his work, the duties he performed and the manner in which he performed those duties, including any documents reflecting when he was hired and when his employment was terminated, including any Human Resources file Kuzzens knows about which may hold information about Tovar-Guzman including any insurance Kuzzens may have purchased that would have covered Tovar-Guzman in any capacity while he Worked on traveling to Kuzzens' property.

**ANSWER:** See Bates-stamped documents Kuzzens 00001-00096, produced.

5. Identify all agreements between or among Kuzzens, Inc. and Six L's Packing, Inc. ("Six L's"), L.C. Agricultural Services, Inc. ("L.C.-A"), L.C. Enterprises, Inc. ("L.C.-E"), Lippman, Lippman Produce, Fortino Garcia & Sons Harvesting, LLC, David Garcia and Claudio Tovar-Guzman, that have any connection with the transporting workers or farm laborers to Kuzzens' farms and/or planting, cultivating or harvesting of tomatoes from Kuzzens' farms in the United States, including any agreements for the procuring, servicing, supporting or recruiting of workers to work on the farms or facilities of the other.

**ANSWER:** See previously served objection.

6. Explain in detail, identifying all facts that support your contention, why you contend in your answer to Plaintiffs' first amended Complaint that this Court lacks personal jurisdiction over this defendant.

**ANSWER:** Kuzzens, Inc. is a Florida corporation. The accident which is the subject of the amended complaint did not arise from Kuzzens transacting any business in this Commonwealth, contracting to supply services or things in this Commonwealth, causing tortious injury by an act or omission in this Commonwealth, causing tortious injury in this

4

Commonwealth by an act or omission outside of this Commonwealth, causing injury in this Commonwealth by breach of warranty, having an interest in, using, or possessing real property in this Commonwealth, contracting to insure any person, property or risk located within this Commonwealth, or any other act on its part, directly, or by an agent giving rise to personal jurisdiction in Virginia.

7. Identified for whom Tovar-Guzman worked on June 30, 2011 - July 2, 2011 and the positions he held on July 2, 2011 and has held, identifying the name of any person(s) who acted in a supervisory, managerial, or leadership capacity who did or may have directed and/or proscribed employee duties of Claudio Tovar-Guzman from the start of his relationship with Kuzzens, Six L's, L.C.-A, L.C.-E and/or Lippman until his departure from that relationship.

**ANSWER:** Unknown as to Tovar-Guzman's employment on June 30, 2011 to July 2, 2011. He did not work for Kuzzens, Inc. See answers to interrogatories 3 and 4 for information concerning his employment at other times.

8. Identified for whom Tovar-Guzman worked on June 1, 2010 - June 30, 2010 and the positions he held on July 1, 2010 - July 30, 2010, identifying the name of any person(s) who acted in a supervisory, managerial, or leadership capacity who did or may have directed and/or proscribed employee duties of Claudio Tovar-Guzman from the start of his relationship with Kuzzens, Six L's, LFC-A, LFC-E and/or Lipman until his departure from that relationship.

**ANSWER:** See answers to interrogatories 3 and 4 for information concerning Tovar-Guzman's employment. A daily schedule is created by David Garcia. Fortino Garcia instructed his crew when and where to be for work on a daily basis.

9. Explain in detail Kuzzens' connection to the bus including every time the bus or

5

similar vehicles owned or leased by Fortino Garcia and Son Harvesting was used on its farm in either South Carolina or Virginia or to for from either of those farms from 2009 - 2012, every payment Kuzzens or its affiliates has made to Fortino Garcia and/or Fortino Garcia and Sons Harvesting, Inc. for the use of the bus including but not limited to payments for its use, maintenance, operation, mileage, insurance and repairs.

**ANSWER:** Kuzzens does not have records of the bus or similar vehicles owned or leased by Fortino Garcia and Son Harvesting. Kuzzens did not pay Fortino Garcia and Sons Harvesting for use of the bus. Kuzzens had an independent contractor agreement for agricultural services with Fortino Garcia and Sons Harvesting.

10. Describe the types of employees employed by Kuzzens, Six L's, LFC-A, LFC-E, and Lipman, including how each employee is compensated, by whom, who manages the human resources aspects of each type of employee, who pays for each type of employees workers compensation coverage, who is responsible for each type of employee, who has the power to fire each type of employee, and who controls the manner and method in which the employees perform.

**ANSWER:** See previously served objection.

11. If you contend that Claudio Tovar-Guzman was not acting within the scope of his employment when the bus he was driving struck the bank of the van on July 2, 2011, state in detail all facts regarding your contention, why he was driving the bus on that date, how Claudio Tovar-Guzman came into possession of the bus, who directed where the bus was to travel, where the bus was to arrive after leaving South Carolina, and for what purpose.

**ANSWER:** Tovar-Guzman was not employed by Kuzzens on July 2, 2011 and therefore

6

he was not acting in the scope of his employment with Kuzzens. Furthermore, Kuzzens did not hire Tovar-Guzman to drive the bus and it is Kuzzens' understanding that Tovar-Guzman was not hired by Fortino Garcia and Sons Harvesting, Inc. to drive the bus. Kuzzens does not know why Tovar-Guzman was driving the bus or how he came into possession of the bus.

12. Describe in detail the corporate structure of Lipman, Six L's Packing, L.C.-A, L.C.-E, and Kuzzens, including how they relate to one another, the type and nature of the business of each entity, the names of all corporate officers and managers for each entity, the corporate address for each entity, and whether Kuzzens, Six L's, L.C.-A, L.C.-E, or Lippman maintains a human resources department responsible for overseeing employees for each respective entity.

**ANSWER:** See previously served objection.

13. State specifically and explain in detail the relationship between Kuzzens and Fortino Garcia and Fortino Garcia and Sons Harvesting, Inc.

**ANSWER:** Fortino Garcia and Sons Harvesting, Inc. is an independent contractor who agreed to provide agricultural labor in planting, farming, harvesting, packing, processing and/or distribution as required by Kuzzens, Inc., from time to time.

14. State the employment relationship between David Garcia and Kuzzens from June 1, 2011 through October 15, 2011, including the name of his employer, his job description, his duties and responsibilities, his supervisor, who he supervises or directs, and the manner in which he directs subcontractors or underlings.

**ANSWER:** See Bates-stamped documents 00097-00099, produced.