

T A Y L O R W A L K E R P.C.

**Brian N. Casey**
**bcasey@taylorwalkerlaw.com**

December 4, 2013

Patrick Brogan, Esquire
DAVEY & BROGAN, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23514-3188

Re:   Kathleen Kitterman, Anna Cronin, Corrie Ball, Marvin Ball, Margaret Brogan and Evan
      Jones v. Claudio Tovar-Guzman, Fortino Garcia and Sons Harvesting, Inc. and Kuzzens,
      Inc.
      Civil Action No. 2:12cv146

Dear Patrick:

I enclose Kuzzens, Inc.'s supplemental answers to plaintiffs' first interrogatories 5 and 13 and
supplemental responses to first requests for production 1 and 5.

Thanking you and with kind regards, I am

Very truly yours,

TAYLOR WALKER P.C.

Brian N. Casey
BNC/ssv
Enclosures
cc:    Bryan K. Meals, Esquire
       James R. Jebo, Esquire
       Todd M. Fiorella, Esquire
       John G. Baker, Esquire
       H. Robert Yates, III, Esquire
       Alexander K. Page, Esquire

NORFOLK OFFICE  ■  T 757 625 7300   F 757 625 1504
555 EAST MAIN STREET, SUITE 1300, NORFOLK VA 23510
WWW.TAYLORWALKERLAW.COM

RICHMOND OFFICE  ■  T 804 673 0341   F 804 673 2001
6800 PARAGON PLACE, SUITE 626, P.O. BOX 6649, RICHMOND VA 23230

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

KATHLEEN KITTERMAN, ANNA CRONIN,
CORRIE BALL, MARVIN BALL,
MARGARET BROGAN and EVAN JONES,

      **Plaintiffs,**

**v.**                                **Case No. 2:12cv146**

CLAUDIO TOVAR-GUZMAN,
FORTINO GARCIA AND SONS HARVESTING, INC.
and KUZZENS, INC.,

      **Defendants.**

## KUZZENS, INC.'S SUPPLEMENTAL ANSWERS TO PLAINTIFFS' FIRST INTERROGATORIES 5 AND 13

5. Identify all agreements between or among Kuzzens, Inc. and Six L's Packing, Inc. ("Six L's"), LFC Agricultural Services, Inc. ("LFC-A"), LFC Enterprises, Inc. ("LFC-E"), Lipman, Lipman Produce, Fortino Garcia & Sons Harvesting, LLC, David Garcia and Claudio Tovar-Guzman, that have any connection with the transporting workers or farm laborers to Kuzzens' farms and/or planting, cultivating or harvesting of tomatoes from Kuzzens' farms in the United States, including any agreements for the procuring, servicing, supporting or recruiting of workers to work on the farms or facilities of the other.

**OBJECTION:** This interrogatory is objected to as being over broad and not relevant to a claim or defense of the parties. Specifically, the interrogatory requests information concerning agreements entered into by companies, entities and individuals who are not parties to this litigation and who were not involved in the operation of the bus which caused the accident which is the subject of this action. Accordingly, this interrogatory exceeds the scope of discovery as set

forth in Federal Rule of Civil Procedure 26.

**ANSWER:** See previously served objection.

**SUPPLEMENTAL ANSWER:** Without waiving the objection, see Independent Contractor Agreement-Crew Leader Providing Agricultural Services dated June 3, 2011, by and between LFC Agricultural Services, Inc. and F. Garcia and Sons Harvesting.

13. State specifically and explain in detail the relationship between Kuzzens and Fortino Garcia and Fortino Garcia and Sons Harvesting, Inc.

**ANSWER:** Fortino Garcia and Sons Harvesting, Inc. is an independent contractor who agreed to provide agricultural labor in planting, farming, harvesting, packing, processing and/or distribution as required by Kuzzens, Inc., from time to time.

**SUPPLEMENTAL ANSWER:** See also Independent Contractor Agreement - Crew Leader Providing Agricultural Services, dated June 3, 2011, by and between LFC Agricultural Services, Inc. and F. Garcia and Sons Harvesting.

KUZZENS, INC.

By _____
Of Counsel

James E. Brydges, Jr., Esquire
Brian N. Casey, Esquire
TAYLORWALKER P.C.
Post Office Box 3490
Norfolk, Virginia 23514-3490
(757) 625-7300
(757) 625-1504 (fax)
bcasey@taylorwalkerlaw.com
jbrydges@taylorwalkerlaw.com

2

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Supplemental Answers to Plaintiffs' First Interrogatories 5 and 13 were e-mailed and mailed first-class, postage prepaid to pbrogan@daveybrpganpc.com, Patrick Brogan, Esquire, DAVEY & BROGAN, P.C., 101 Granby Street, Suite 300, Norfolk, VA 23514-3188; tmfiorella@ff-legal.com, Todd M. Fiorella, Esquire, John G. Baker, Esquire, jfbaker@ff-legal.com, FRAIM & FIORELLA, P.C., Town Point Center, 150 Boush Street, Suite 601, Norfolk, VA 23510; jjebo@hccw.com, James R. Jebo, Esquire, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Post Office Box 70280, Richmond, VA 23255; and to robert.yates@leclairryan.com, alexander.page@leclairryan.com, H. Robert Yates, III, Esquire, Alexander K. Page, Esquire, LeCLAIR RYAN, 123 East Main Street, Eighth Floor, Charlottesville, VA 22902, this 4th day of December, 2013.

Brian N. Casey

3

KATHLEEN KITTERMAN, ANNA CRONIN,
CORRIE BALL, MARVIN BALL,
MARGARET BROGAN and EVAN JONES,

      Plaintiffs,

v.                                      Case No. 2:12cv146

CLAUDIO TOVAR-GUZMAN,
FORTINO GARCIA AND SONS HARVESTING, INC.
and KUZZENS, INC.,

      Defendants.

## KUZZENS, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS 1 and 5

Kuzzens, Inc. ("Kuzzens"), by counsel, for its supplemental responses to plaintiffs' first requests for production of documents 1 and 5 states as follows:

1. All documents identified in your Answers to Plaintiffs' First Set of Interrogatories.

**RESPONSE:** See Bates-stamped documents identified in interrogatory answers.

**SUPPLEMENTAL ANSWER:** See Independent Contractor Agreement - Crew Leader Providing Agricultural Services, dated June 3, 2011, by and between LFC Agricultural Services, Inc. and F. Garcia and Sons Harvesting.

5. All documents relating in any way to Fortino Garcia's employment by or business relationship with Kuzzens.

**RESPONSE:** See previously served objection.

**SUPPLEMENTAL ANSWER:** See Independent Contractor Agreement - Crew Leader Providing Agricultural Services, dated June 3, 2011, by and between LFC Agricultural Services,

Inc. and F. Garcia and Sons Harvesting.

KUZZENS, INC.

By _____
Of Counsel

James E. Brydges, Jr., Esquire
Brian N. Casey, Esquire
TAYLORWALKER P.C.
Post Office Box 3490
Norfolk, Virginia 23514-3490
(757) 625-7300
(757) 625-1504 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Supplemental Responses to Plaintiffs' First Requests for Production 1 and 5 were e-mailed and mailed first-class, postage prepaid to pbrogan@daveybrpganpc.com, Patrick Brogan, Esquire, DAVEY & BROGAN, P.C., 101 Granby Street, Suite 300, Norfolk, VA 23514-3188; tmfiorella@ff-legal.com, Todd M. Fiorella, Esquire, John G. Baker, Esquire, jfbaker@ff-legal.com, FRAIM & FIORELLA, P.C., Town Point Center, 150 Boush Street, Suite 601, Norfolk, VA 23510; jjebo@hccw.com, James R. Jebo, Esquire, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Post Office Box 70280, Richmond, VA 23255; and to robert.yates@leclairryan.com, alexander.page@leclairryan.com, H. Robert Yates, III, Esquire, Alexander K. Page, Esquire, LeCLAIR RYAN, 123 East Main Street, Eighth Floor, Charlottesville, VA 22902, this 4th day of December, 2013.

_____
Brian N. Casey

2

# INDEPENDENT CONTRACTOR AGREEMENT-
## CREW LEADER PROVIDING AGRICULTURAL SERVICES

THIS AGREEMENT is made and entered into effective as of the _3RD_ day of _____June_____, 201\_, by and between **LFC Agricultural Services, Inc.**, a Florida corporation ("Principal"), with an address of 315 East New Market Road, Immokalee, Florida 34142, and the party executing the Signature Page and Exhibit A attached hereto and incorporated herein by reference ("Contractor") **F. Garcia & Sons Harvesting**.

## RECITALS

The parties to this Agreement acknowledge and affirm the truth and accuracy of the following recitals and incorporate them as part of this Agreement:

A.     The Principal is a Florida entity duly organized and existing in good standing under the laws of the state of Florida.

B.     Contractor is an individual duly qualified or an entity duly organized and existing in good standing under the laws of its state of organization, holds all necessary licenses, registrations, permits or other authorizations at the local, state and federal levels to conduct its business of providing agricultural services, including but not limited to farming, harvesting, packing, processing, distribution, and other related agricultural services, to businesses as an independent contractor via agreement through its duly qualified employees ("Services").

C.     Contractor is unrelated to Principal and provides Services to businesses other than Principal.

D.     Contractor agrees to perform Services for the Principal from time to time as an independent contractor under the terms and conditions set forth in this Agreement.

## OPERATIVE PROVISIONS

NOW, THEREFORE, the parties agree as follows:

1.     <u>Creation of Contractual Relationship</u>.  Principal hereby contracts with Contractor to perform Services for Principal under the terms and conditions set forth in this Agreement.

2.     <u>Term of Engagement</u>.  Except as otherwise provided herein, the term of this Agreement shall commence on the Effective Date and continue until terminated as provided herein.

3.     <u>Services Provided</u>.  Generally, Contractor has agreed to provide Services to Principal by providing agricultural labor as Principal requires in planting, farming, harvesting, packing, processing and/or distribution as directed by Principal from time to

time. Prior to commencement of this Agreement, Principal has provided Contractor orientation with respect to Principal's operations and, during the term of this Agreement, upon Contractor's written request, shall provide any information or counseling assistance as may reasonably be requested by Contractor to assist Contractor in providing the Services. Principal shall advise Contractor as the need develops as to the location of the work or job to be performed, the nature of the work or job, the time and place where Principal desires to have the work performed and the approximate number of workers required to perform the work. **Exhibit A** indicates the number of workers to be provided by Contractor, the nature of their work, and the expected duration of the work, hereunder. **Exhibit A** also provides a brief summary description of the Contractor's obligations hereunder (the summary is for informational purposes only and if there is a conflict between the summary and this Agreement, the terms of this Agreement shall control over the summary job description).

4. <u>Duty to Perform Services/Control</u>. Contractor shall be permitted to freely arrange its employees' schedules in rendering the Services on behalf of the Principal. Contractor agrees it shall exert its best efforts in providing the Services for the Principal; however, Contractor agrees to observe and comply with the policies, standards, and procedures of the Principal, provided they are reasonable and do not violate any rule, regulation, or law of any governmental body. Provided, however, Contractor shall have complete control, direction and supervision over the hiring and firing of all workers provided by Contractor. Contractor shall have complete control, direction and supervision of Contractor's labor force while working on properties of the Principal. Complaints, directions or instructions by the Principal shall be made directly to Contractor or Contractor's duly authorized agent or representative. Contractor shall have complete control, direction and supervision over and arrange Contractor's own method of transportation for workers to and from the job. Contractor shall have complete control, direction and supervision over the vehicles used by Contractor in the transportation of labor, materials, supplies or equipment. Contractor shall have complete control over the hours during which Contractor's labor force works. Principal agrees to exercise no direct control over the labor force while Contractor is engaged in carrying out Contractor's work but to deal directly with Contractor, Contractor's agents or representatives, in issuing instructions, making criticisms or complaints regarding the performance of the labor force while at work. Principal further agrees that Principal will exercise no control, direction or supervision over the vehicles used by Contractor in transporting the workers, materials, supplies or equipment with respect to the Services provided hereunder. Notwithstanding, anything in this Agreement which may be construed to the contrary, Contractor agrees to abide by the "Code of Conduct" set forth below:

4.1 Housing:

(a) A Contractor shall not charge any worker for housing provided by Principal.

(b) Contractor shall ensure strict compliance with and adherence to housing policies published from time to time by Principal or any other person or entity

supplying worker housing; including, but not limited to the Seasonal Employee Housing Agreement Rules & Regulations attached hereto as **Exhibit B**, as such may be amended from time to time by Principal.

(c)     Contractor shall ensure all workers housing is properly cleaned and maintained.

(d)     Contractor shall ensure that each worker has adequate housing and that all workers housing has been inspected for cleanliness, maintenance and safety (whether provided by Principal, Contractor, or any other person or entity).

(e)     Contractor agrees that no worker occupying housing supplied by or arranged for by Principal shall perform services for any person other than Principal while occupying housing supplied by or arranged for by Principal.

4.2     Transportation:

(a)     Contractor shall ensure vehicles used to transport workers are inspected, maintained, insured, driven by properly licensed drivers, and that said vehicles and drivers are in compliance with all local, state and federal laws ("Authorized Vehicles").

(b)     Contractor shall provide workers with free transportation to and from work in Authorized Vehicles.

(c)     Contractor shall provide free transportation in Authorized Vehicles for workers to procure necessary food, clothing, toiletries, and medical attention, as often as reasonably necessary and at a minimum of once per week.

(d)     Contractor shall abide by and follow the Principal's start and stop procedures for workers (for example, no early arrival to the work premises of Principal).

(e)     All vehicles entering Principal's property (whether owned or leased) shall be Authorized Vehicles owned or legally leased by Contractor.

4.3     Social Accountability:

(a)     Contractor shall not use workers for whom a commission is paid to a third party on piecework basis.

(b)     Contractor shall not create a relationship of any type of indenture (work without pay, etc.) with any employee or worker nor shall they utilize the services of anyone subjected to indenture by a third party. Contractors are required to exercise constant due diligence to ensure no violations of the rights of workers in this respect.

(c)     Contractor acknowledges and agrees that any worker may elect to not work.

(d)     Contractors shall ensure that all workers are properly treated while both at work and off work.

(e)     If Contractor is not sure that any worker is being treated fairly and/or is free to work on their own accord, Contractor shall not allow them to work under Contractor's license and immediately report such matter to Principal.

(f)     Contractor acknowledges and agrees, that in the event that any worker is found to have been subjected to indenture or other criminal activities while employed by Contractor on behalf of Principal, Contractor's working relationship with Principal (or any of its Affiliates) under this Agreement or otherwise will be terminated immediately and the proper authorities will be notified.

4.4     Workers Compensation: Contractor shall report all accidents that occur on Principal's property to appropriate personal and ensure the worker is taken for medical treatment in a timely manner (if applicable).

4.5     Payroll:

(a)     Contractor shall ensure that all hours/pieces worked are accurate and properly recorded.

(b)     Contractor shall ensure that each worker receives their weekly pay check (the handing out of checks and the receipt signature of the worker will be performed by the Contractor or a representative of the Contractor in the presence of a representative of the Principal).

(c)     Contractor shall not hold the workers' identification cards ("ID Cards") issued by the Principal or by any other private or governmental entity.

(d)     Contractor shall abide by the Principal's start and stop procedures and will arrive no earlier than fifteen (15) minutes prior to the call time established by a representative of Principal for that day.

(e)     Contractor in the presence of a representative of Principal, shall promptly disburse wages to his/her workers in full compliance with the Migrant and Seasonal Agricultural Worker Protection Act.

4.6     Worker Requirements/Registration:

(a)     Contractor shall require that all workers be at least 18 years of age.

(b)     Contractor shall adhere to Principal's policy regarding the obtainment of an I-9.  Unless directed otherwise, Contractor shall obtain a certificate from an authorized agency stating that the worker has provided the necessary documentation proving eligible work status in the United States, prior to registering with the Principal.

(c)     All workers must complete the Principal's new hire registration package, view the Principal's orientation video and receive all required training prior to employment by Contractor on behalf of Principal.

(d)     Contractor shall complete and submit a "Pre-Employment Questionnaire" (see **Exhibit C**) for each recruit prior to registering the worker to work for the Principal.

5.     <u>Compensation of Contractor by the Principal/Recordkeeping and Reporting</u>. The Principal shall compensate Contractor for the Services provided hereunder after such Services are performed, based on rates of compensation contained in schedules attached hereto as **Exhibit D**. The Principal shall pay Contractor its compensation as often as the Contractor requests, but no more frequently than weekly. Contractor agrees that the compensation paid by the Principal to Contractor is in full satisfaction for the Services provided herein. Contractor agrees to pay any fines imposed by Principal in accordance with the schedule included in **Exhibit D**, and that said fines may be deducted from any compensation otherwise due Contractor by Principal. To the extent Contractor owes more in fines than Principal owes Contractor, Contractor shall immediately pay said fines to Principal upon demand. Contractor acknowledges, agrees and understands that the fines are not a penalty, but are liquidated damages to compensate Principal for damages Principal will incur due to Contractor's breach of the terms of this Agreement. Furthermore, Contractor agrees and understands that the exact measure of the damages from a breach by Contractor subject to said fines cannot be determined with mathematical certainty and that the fines are reasonable approximations of the damages that Principal will sustain due to Contractor's breach. Contractor further agrees that all fines shall be economically borne by Contractor, and Contractor shall not, directly or indirectly, by any means whatsoever, transfer said burden to any of Contractor's workers (or in any fashion cause said workers to pay any or all of said fines). Contractor shall promptly pay or disburse wages to Contractor's workers in accordance with the terms of any individual contracts and in full compliance with the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §1801, et seq., as amended, the Florida Farm Labor Contractor Registration Law, Florida Statute § 450.27, et seq., and any and all other applicable provisions of federal and state wage and labor laws, or any other laws applicable to the Contractor or the Services for the jurisdictions in which the Services are preformed, and will fully comply with all other federal, state and local laws pertaining to taxes and payroll deductions, including the Federal Insurance Contribution Act, commonly referred to as Social Security. Contractor shall provide Principal with daily and/or weekly reports of Services performed in order for Principal to calculate compensation owed and the quality of the performance by Contractor of the Services hereunder. It is understood and agreed that Contractor is responsible for the accuracy and compilation of the employee payroll records and the items which are required on those records under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §1801, et seq., the Fair Labor Standards Act of 1938, 29 U.S.C. §201, et seq., and other applicable local, state and/or federal laws.

6.    Relationship Between Parties.  The parties acknowledge that Contractor is an independent contractor and not a joint venturer, partner, employee, or agent of the Principal by virtue of this Agreement.  The Principal has no control over the manner or method by which Contractor meets Contractor's obligations under this Agreement; provided that Contractor's Services shall be performed in a competent and efficient manner in accordance with current professional standards and in compliance with the policies of the Principal and the terms of this Agreement.  The Principal will not withhold for Contractor any sums for income tax, Social Security, unemployment insurance, or any other employee withholding nor will the Principal offer Contractor any employee benefits including, without limitation, health or dental insurance, pension benefits, worker's compensation coverage, and death and disability insurance.  As between the Principal and Contractor, Contractor shall be solely responsible for all employment related withholdings and benefits.  Contractor and Principal agree that this Agreement is nonexclusive and Contractor reserves the right and privilege of furnishing labor and services to other agricultural businesses, and Principal reserves the right and privilege of contracting with other labor contractors for the performance of such services as may be required in the operation of its business.  Nothing in this Agreement constitutes or implies a requirement or guarantee of a permanent or exclusive arrangement between Principal and Contractor.

7.    Insurance.  Contractor shall provide written evidence of insurance coverage, or exemption therefrom, at such periodic intervals as the Principal may request.  Contractor shall maintain in full force and effect at its sole cost and expense, a general liability insurance policy commonly known as "all risk" or "public liability" providing liability coverage for claims arising from personal injury, death and property damage.  Contractor shall also maintain in full force and effect at its sole cost and expense vehicle liability insurance coverage in at least the minimum limits required by Florida law (and if greater the laws for the jurisdictions in which the Services are provided) and by the Migrant and Seasonal Agricultural Workers' Protection Act, 20 U.S.C. §1801, et seq., on each motor vehicle Contractor owns, operates, controls or causes to be operated in the performance of farm labor contracting duties for Principal. Contractor agrees to have Principal's name listed as an additional insured under the general liability and automobile liability insurance policies.   Upon the request of Principal, Contractor shall provide Principal with copies of all insurance policies, including the declaration pages thereto.

8.    Registration, Licenses, Authorizations, Certifications, Training, Etc. Contractor shall pay all fees for any occupational licenses which it may be required to obtain. Pursuant to the terms and conditions of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, et seq., as amended, the Florida Farm Labor Contractor Registration Law, Florida Statute § 450.27, et seq., as amended, the provisions of any applicable state or local laws for the jurisdiction in which the Services are performed, and the regulations promulgated thereunder, Contractor specifically agrees to obtain and, at all material times, keep in full force and effect a Certificate of Registration from the Department of Labor (and/or the applicable state agency(ies) regulating businesses of this type, including without limitation, for Services performed in Florida, the Florida Department of Business and Professional Regulation) authorizing

6

Contractor to perform each activity for Principal for which the Contractor is to be utilized and to ensure that each of Contractor's workers, obtain and, at all material times, keep in full force and effect a Farm Labor Contractor Employee Certificate of Registration and all other necessary certificates, licenses and registrations authorizing him/her to perform any activity for the benefit of Principal.  Contractor shall require that all of Contractor's workers agree to, at all times, carry a Certificate of Registration, a Farm Labor Contractor's Employee Certificate, and/or all other necessary certificates, licenses, and registrations while engaging in farm labor contracting activities for Principal.  Contractor and its employees shall, upon request and as appropriate, exhibit the aforesaid certificates to Principal or representatives of the U.S. Department of Labor and state employment service agencies.  Contractor shall employ Contractor's own employees and shall be responsible for all social security, worker's compensation, liability insurance, unemployment insurance, crew leader licensing, employee certification (Form I-9), Environmental Protection Agency worker training requirements and any other federal and state labor requirements.  Contractor hereby certifies that all workers furnished by Contractor who are performing or assisting in performing Services under this Agreement are eligible to work in the United States, and that they are employed in compliance with the provision of the Fair Labor Standards Act of 1938, 29 U.S.C. §201, et seq. and the Migrant and Seasonal Agricultural Workers' Protection Act, 29 U.S.C. §1801, et seq.  Contractor shall provide written evidence of all licenses at such periodic intervals as the Principal may request.

      9.   <u>Compliance with Laws</u>. Contractor shall post and give all notices as required by federal, state and local ordinances and comply with all federal, state and local laws, ordinances, rules, regulations and orders of any public authority bearing on the performance of work for Principal including, but not limited to, the requirements of the following statutes and accompanying regulations as applicable (in addition to all applicable laws in the jurisdiction in which Services are performed during the term of this Agreement and relating to the performance of work for Principal):  Fair Labor Standards Act of 1938, 29 U.S.C. §201, et seq.; Equal Pay Act of 1963, 29 U.S.C. §201, et seq.; Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §1801, et seq.; Occupational Safety and Health Act of 1970, 29 U.S.C. §651, et seq.; Immigration Reform and Control Act of 1986, 8 U.S.C. §1101, et seq.; Immigration Act of 1990, Public Law 101-649, et seq; Rehabilitation Act of 1973, 29 U.S.C. §701, et seq.; Federal Worker Protection Standard for Agricultural Pesticides, 40 C.F.R. 170, et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.; Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, et seq.; Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.; Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq; Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq.; Portal-to-Portal Act of 1947, 29 U.S.C. §251, et seq.; North American Free Trade Agreement Implementation Act, 19 U.S.C. §3301, et seq.; Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. §136, et seq.; Florida Civil Rights Act of 1992, Florida Statute § 760.01, et seq.; Florida Workers' Compensation Law, Florida Statute § 440.01, et seq.; Florida Child Labor Law, Florida Statute § 450.001, et seq.; Florida Alfredo Bahena Act, Florida Statute § 450.175, et seq.; and Florida Farm Labor Contractor Registration Law, Florida Statute §450.27, et seq. as well as any amendments to any of the foregoing.  The reference above to any specific federal and

state statutes and provisions shall not be deemed to lessen or reduce the above agreement to comply with all applicable provisions of federal, state and local law.

      10.    <u>Transportation/Miscellaneous Equipment</u>. Contractor shall furnish at Contractor's own expense all motor vehicles, including buses, for the transportation of workers to and from the premises of Principal and any personal vehicles used by Contractor in Contractor's furnishing of equipment or labor. Contractor shall furnish Contractor's own drivers necessary to perform and carry out the farm labor contracting duties under this Agreement. In providing the aforesaid transportation, Contractor shall ensure that any vehicle which Contractor uses or causes to be used conforms to vehicle safety standards prescribed by the Secretary of Labor under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §1801, et seq. and other applicable federal and state safety standards. Contractor shall also ensure that each driver of any such vehicle has a currently valid motor vehicle operator's permit or license as provided by applicable state law to operate the vehicle. Contractor shall also furnish at Contractor's own expense all other miscellaneous equipment or personnel items not specifically agreed to be furnished by Principal necessary to perform and carry out farm labor contracting Services under this Agreement.

      11.    <u>Facilities</u>. The Principal shall not be obligated to provide Contractor with any facilities or equipment for the performance of Contractor's duties pursuant to this Agreement.

      12.    <u>Indemnification by Contractor</u>. Contractor shall indemnify and hold harmless Principal and its agents and employees from and against all claims, damages, losses, and expenses including attorney's fees arising out of or resulting from the performance of the Services, including, but not limited to, any such claim, damage, loss or expense attributable to bodily injury, sickness, disease or death, or to injury or destruction to tangible property including the loss of use resulting therefrom, or caused wholly or in part by any act or omission of Contractor, any foreman or sub-contractor or employee of Contractor, or any one directly or indirectly employed by any of them or any one for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. As to any claims against Principal or any of its agents or employees by any employee of Contractor, sub-contractor or foreman of Contractor or any one directly or indirectly employed by any of them or any one for whose acts any of them may be liable, the indemnification obligation under this section shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Contractor, sub-contractor or foreman of Contractor under workers' compensation acts or any employee benefit acts. Contractor does further agree to indemnify and hold harmless Principal, its related corporations, subsidiaries, Affiliates, successors, officers, owners, employees and agents, and any of them (indemnities) against any rights or claims, demands or actions brought on account of a failure of Contractor or Contractor's employees or agents to comply with the terms of this Agreement, failure to pay the legally required or proper compensation for hours worked for work performed by the employees of Contractor, or failure to comply with all applicable federal, state, or local laws, including but not limited to all statutes, laws, ordinances, rules and regulations described in this Agreement

beginning with the term of this Agreement, including any and all legal or other expenses incurred or payments made by the indemnitees in investigation, defending or preparing to defend or settling any such action or actions whether prior to or subsequent to the commencement to any litigation.

13.     Representations and Warranties of Contractor. Contractor represents and warrants it has full power and authority to execute and deliver the Services contracted for hereunder. Contractor further represents that Contractor is a specialized business providing Services and that it has all the required registrations, licenses, and permits required by applicable state, local and federal law to provide the Services. Contractor further represents and warrants to Principal that upon execution and delivery of this Agreement by Contractor, this Agreement shall constitute a legal, valid and binding agreement and obligation of Contractor, enforceable against it in accordance with its terms, and that the execution of this Agreement and the performance of the obligations hereunder shall not constitute a breach of any fiduciary or other duty, covenant, understanding or agreement to which it is a party or by which it is bound.

14.     Termination. This Agreement shall terminate upon the happening of any of the following events:

14.1    Upon the dissolution of either the Principal or Contractor;

14.2    Inability of Contractor for any reason to provide Services contemplated under this Agreement, including suspension, revocation or cancellation of Contractor's right to provide such Services under applicable laws, regulations, rules or ordinances of Federal, state and local governments;

14.3    Whenever Contractor, upon thirty (30) days prior written notice to Principal, states an intent to terminate; and,

14.4    Immediately by Principal, upon written notice to Contractor declaring termination.

15.     Principal's Payroll System. Principal has a computerized payroll system, and as a service to Contractor, is willing to process Contractor's payroll and Contractor has agreed to use Principal's payroll system as provided herein. Principal will be responsible for preparing payroll checks for employees of Contractor, said checks to reflect payroll information supplied by Contractor. Principal will also assume responsibility and, as a service to Contractor, make payments of unemployment insurance, worker's compensation, withholding taxes, social security taxes and/or deductions of employees of Contractor. Contractor hereby grants Principal the authority to sign payroll checks on behalf of Contractor as a part of the payroll service. As a convenience to Contractor, such payroll checks may be drawn against the accounts of Principal. As an additional convenience to Contractor, Principal will administer Family Medical Leave Act ("FMLA") notices and other FMLA responsibilities on the Contractor's behalf. It is expressly understood that this payroll service agreement in no way diminishes Contractor's standing as employer or increases Principal's liability under this

Agreement, and is purely a ministerial act on behalf of Principal. Contractor specifically authorizes Principal to offset against any compensation payable to Contractor hereunder all amounts expended by Principal with respect to payroll checks made by Principal on behalf of Contractor pursuant to this section.

16. <u>Miscellaneous</u>.

16.1   This Agreement, the rights and obligations of the parties hereto, and any claims or disputes relating thereto, shall be exclusively governed by and construed in accordance with the laws of the state of Florida (without regard to any Florida law which would require the application of the law of any other state or jurisdiction). Venue for any dispute under this Agreement shall exclusively be in the state courts of competent jurisdiction located in Lee County, Florida.

16.2   Any references in this Agreement to any ordinance, rule, regulation, statute, or other law, whether directly, indirectly, or sequentially, is intended to include any subsequent amendments to said law as adopted, ratified, interpreted, renumbered, or otherwise modified by the governing legal body issuing said ordinance, rule, regulation, statute, or other law. In addition, references in this Agreement to applicable requirements of state and local law shall include the law of the jurisdiction (state and local) in which Services are provided at any time during the term of this Agreement.

16.3   This instrument contains the entire agreement of the parties. It may be modified only in writing.

16.4   The term "Affiliates" means Principal and any entity owned or controlled by Principal or any entity which owns or controls Principal, whether directly or indirectly.

16.5   This Agreement is personal to Contractor. Contractor may not assign, pledge or transfer Contractor's interest in this Agreement, or Contractor's duties, obligations and responsibilities under and pursuant to this Agreement, without Principal's prior written consent. This Agreement shall inure to the benefit of, and is binding upon, the parties hereto, and their respective heirs, representatives, successors and assigns.

16.6   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original instrument, and said counterparts shall constitute but one and the same agreement which may be sufficiently evidenced by one counterpart. Facsimile copies of executed documents or executed documents sent as a PDF attachment to an e-mail transmission, shall be deemed originals for all purposes.

16.7   In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if such

invalid, illegal or unenforceable provision had never been contained in this Agreement.

16.8   No waiver of any breach of any agreement or provision in this Agreement shall be deemed a waiver of any preceding or succeeding breach of this Agreement.  No extension of time for performance of any obligation or act shall be deemed an extension of time for performance or any other obligation or act.

16.9   Whenever any notice is required or permitted to be given under any provision of this Agreement, such notice will be in writing, signed by or on behalf of the party giving the notice and shall be deemed to have been given when delivered by personal delivery or mailed by certified or registered mall, postage prepaid, return receipt requested, addressed to the party or parties to whom such notice is to be given at the addresses noted above.

16.10  The headings of the various sections herein contained are intended for ease of reference only and are not to be construed as evidence of the intent as to the contents thereof.

16.11  In the event of any dispute as to the precise meaning of any term contained herein, the principles of construction and interpretation that written documents be construed against the party preparing same shall not be applicable.  Each representation, warranty and covenant contained herein shall have independent significance.

The parties have executed this Agreement as of the Effective Date with the intent to be legally bound.

**THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK-
SIGNATURE PAGES AND EXHIBITS FOLLOW**

## SIGNATURE PAGE and EXHIBIT A

### INDEPENDENT CONTRACTOR AGREEMENT-
### CREW LEADER PROVIDING AGRICULTURAL SERVICES

Contractor: _F. Garcia & Sons Harvesting_

Address: _910 Auto Ranch Rd, Naples, FL 34114_

#### Estimated Labor Requirements

Period of Time: _July 1, 2011 - November 1, 2011_

Number of Workers: _100_

Services (Refer to Exhibit D):

_____ Packing Services        ___✓___ Harvesting Services

_____ Production Services     _____ Clean-Up Services

_____ Other Services          _____ Hauling Services

_____
(Description)
_____

CONTRACTOR

BY: _____
                    (Signature)

_____
                    (Printed Name)

TITLE: _Crew Leader_

DATE: _June 3, 2011_

PRINCIPAL

LFC Agricultural Services, Inc.

_____
Lipman Representative

NOTE: THIS SUMMARY IS TO ASSIST FARM LABOR CONTRACTORS IN UNDERSTANDING THEIR
OBLIGATIONS. IT DOES NOT SUPERSEDE THE INDEPENDENT CONTRACTOR AGREEMENT-CREW
LEADER PROVIDING AGRICULTURAL SERVICES TO WHICH THIS SUMMARY IS ATTACHED AS PART OF
EXHIBIT A. REFER TO EXHIBIT D FOR PAY RATES.

<u>Summary</u>
A Farm Labor Contractor (herein referred to as "FLC") engages in the recruitment,
transportation, and daily supervision of workers, as well as providing appropriate
equipment necessary for workers to complete their jobs.

<u>Essential Duties and Responsibilities of FLCs</u>
- Represent that FLC's business is a specialized business and provide all the
  required registrations, licenses, permits, and insurance (both State and Federal)
  to perform FLC's duties
- Responsible for recruiting eligible workers and ensuring that employment
  eligibility status (I9) is verified by a job service agency
- Furnishes properly registered, maintained and appropriate motor vehicles
  ("transportation") to transport workers to and from work
- Provides the direction and supervision of workers while at work
- Provides transportation for the workers to obtain necessary food and toiletries

FLC asks Principal for available work and/or Principal contacts FLC about Service
needs. Principal informs FLC of employment standards, task and Service needs,
number of workers required, type of crops, and pay rates.

FLC ensures that no one 17 years of age or younger is hired.

FLC must provide valid licenses, insurance certificates and motor vehicle registrations,
and if applicable, any assistant FLC that manages workers.

FLC is required to notify Principal in advance of registering workers and transporting
eligible workers to a job service agency (or equivalent) in the jurisdiction where the
Services are to be performed. Job service agency issues eligibility certificates to work
in United States.

Principal trains, tests and issues a Principal identification card to the workers. Principal
notifies FLC of what, when and where Services are needed and what time to begin
work.

FLC is responsible to transport workers to assigned work locations. FLC shall ensure
that all workers present an identification card and scan in and out of a time clock system
each work day.

FLC ensures workers are correctly performing assigned tasks and are credited for completed work. Each harvesting worker receives a token for every bucket of tomatoes they bring to the harvesting truck. At the end of the work day, FLC and each harvesting worker sums up the number of tokens earned and documents the total number on a day ticket. FLC gives the day tickets to the farm office.

Principal's payroll department processes the day tickets and pays each worker by multiplying the number of buckets picked by the current crop pay rate per bucket.

Principal's employees routinely review work performance and address any deficiencies with FLC. FLC communicates and addresses deficiencies with the workers.

Principal ensures that the state and federal minimum wages are met.

Principal ensures that payroll taxes are withheld and remitted to the proper agency.

FLC harvests 2000 bins for the pay period (Friday to Thursday).
There are approximately 31 buckets in a bin and 32 pounds of tomatoes in a bucket.

FLC Piece Rate Workers
Principal and FLC ensures that for every bin of tomatoes that are harvested by a FLC, there is a corresponding 31 buckets of wages paid to the workers on a piece rate basis.

Principal requires FLC to pay a minimum of $ .55 cents per bucket to the worker that picked the bucket. Approximately $17.05 (31 buckets at $0.55 per bucket = 62,000 tokens) goes to the harvest workers.

The remaining balance between what was paid to the workers ($17.05) and the rate agreed to with the FLC ($26.20) may be remitted to the FLC. If there are any short falls in the minimum wage, the Principal pays the difference; provided, however, if the Principal determines that the shortfall was the result of inadequate supervision, Principal may deduct the shortfall from the FLC. Principal ensures that payroll taxes are withheld and remitted to the proper agency.

FLC Daily Rate Workers:
FLC employs additional workers to facilitate the Service needs and they are paid a daily wage. Principal pays these workers directly and deducts this amount from the amount due the FLC. On average, these individuals cost the FLC $6.00 per bin on a daily rate basis. "Dumper workers" ride on a field truck, receive filled tomato buckets from the harvest worker, empty the buckets into a bin and gives each worker tokens. "Field truck drivers" drive the trucks with the tomato bins. "Field walkers" go behind the workers and ensure that the crops are being harvested correctly.

FLC and Payment
FLC harvests 2000 bins for the pay period (Friday to Thursday).
Principal pays FLC $26.20 per 1,000 pound bin of harvested big round tomatoes.
2,000 bins x $26.20 per FLC bin rate = $52,400
Piece-Rate Workers
31 buckets x 2,000 bins = 62,000 worker tokens documented on daily logs
62,000 tokens x $.55 per token = $34,100 to harvest workers
FLC balance is $52,400 minus $34,100 = $18,300.
Daily Wage Workers
2,000 bins x $6.00 = $12,000
FLC payment would be $6,300 ($18,300 harvest workers pay minus $12,000 daily rate pay workers).

Principal reports payment to the FLC on Form 1099. No taxes are withheld by the Principal since the FLC is an independent contractor.

FLC is financially responsible to provide properly registered, safe and appropriate motor vehicles to transport workers, and properly registered (if legally required), safe and appropriate field trucks to transport full bins of tomatoes from the fields to the designated loading locations. Product is then transported to the packing facilities. Additional FLC's provide the Service of hauling products from the field to the packinghouses. Hauling services are managed in a separate transaction.

**NOTE: PAY RATES VARY SEASONALLY; THE DOLLAR AMOUNTS CITED IN EXAMPLES IN THIS JOB DESCRIPTION ARE FOR ILLUSTRATION PURPOSES ONLY. THE ACTUAL PAY RATES ARE AS DESCRIBED IN EXHIBIT D AND EXHIBIT D CONTROLS AS TO THE PAY RATES NOT THIS JOB DESCRIPTION IF THERE IS ANY DISCREPANCY.**

# EXHIBIT B

## SEASONAL EMPLOYEE
## HOUSING AGREEMENT RULES & REGULATIONS

The following rules are issued and agreed to for the purpose of promoting the safety, welfare and security of residents, visitors, farm workers, and the company's business:

1. While assigned to company housing by the Farm Labor Contractor (FLC), the seasonal employee will be responsible for all installation charges and payment for services of television and/or telephone service (should the seasonal employee want such services). Prior to installation, the seasonal employee must obtain authorization from company management to have any installations completed in the company housing.

2. The seasonal employee will be responsible for all general clean up of grounds, living quarters and cooking facilities. Failure to maintain said facilities, and/or grounds clean of trash and/or garbage, will result in the seasonal employee being given a verbal warning. Continued violations will result in a written notice that a future violation will result in loss of housing privileges.

3. The seasonal employee will report all damage(s) or repair needs to management, immediately after the damage occurs or is noticed. Damages found to be due to the negligence of the resident(s) or seasonal employee(s) will result in responsible party paying for repairs.

| Violation | Fine Amount |
|---|---|
| Tier 1  Unclean Rooms<br>　　　　Repair screens for doors or windows<br>　　　　Damaged smoke detectors | $25.00 |
| Tier 2  Broken Window (s)<br>　　　　Stolen or damaged fire extinguisher<br>　　　　Broken window screen frames | $50.00 |
| Tier 3  Damaged mattress<br>　　　　Damaged stove or cook top<br>　　　　Damaged refrigerator<br>　　　　Damaged furniture | $75.00 |
| Tier 4  Major repair or replacement | Termination of employment or cost of repair/replacement |

4. The seasonal employee will not allow persons to reside in his/her assigned housing if they are not properly registered to be employed by the company, or registered to reside in the unit. Violation will result in loss of housing privilege.

5. The seasonal employee understands the facility will be inspected for cleanliness and damages regularly throughout the season by authorized personnel.

6. The seasonal employee understands that the company will not tolerate excessive drinking of alcoholic beverages, disorderly conduct, loud music or excessively loud noises. Repeated violations may result in loss of housing privileges. Possession or use of illegal drugs will result in immediate loss of housing privilege and be reported to proper law enforcement authorities.

7. The seasonal employee understands that the company does not permit firearms on company property. Display or discharge of firearms will result in immediate loss of housing privileges.

8. The seasonal employee understands that there are to be no major vehicle repairs on company property without written authorization from management. Additionally, the seasonal employee understands that there is to be no releases on company property of any type of motor vehicle fluids (motor oil, transmission fluid, anti-freeze, etc.) and should such an incident occur he/she will be responsible for payment of clean up expense and fees or fines incurred.

9. The seasonal employee understands that all vehicles operated on company property or within the confines of company owned or operated housing, will be operated in accordance with the state and federal vehicle laws. Vehicles must be operated by a licensed driver. The vehicle must be insured, in accordance with state and federal laws. Safe speeds must be observed while driving on farms and on housing facility grounds.

10. The seasonal employee understands that pets are not allowed on company property without written authorization from management or the person in charge of the housing facility. Violation may result in loss of housing privilege.

11. The seasonal employee understands and agrees that the company has implemented "Visitation Rules" which apply to invited guests and other authorized visitors. A copy of the "Visitation Rules" is attached hereto, and the seasonal employee agrees to comply with them.

12. The seasonal employee understands that upon termination of employment or layoff, the seasonal employee must vacate the premises within two (2) days.

**EXHIBIT C**
**PRE-EMPLOYMENT QUESTIONNAIRE**

Crew Leader / Recruiter Name: _____
<span style="margin-left:4em">(Print Name)</span>

Recruit / Applicant Name: _____
<span style="margin-left:4em">(Print Name)</span>

Employee ID: _____

<u>Recruit to Complete</u>

Are you working of own free will?                    Yes_____     No _____

Are you at least eighteen (18) years of age?         Yes_____     No_____

You are required to report any form of abuse by
Any Contractor or Company employee                   Yes_____   No_____

Are you living in adequate housing of your choice?   Yes_____   No_____

I will reside at the following address:

_____

_____

Do you understand that your paycheck is yours and
that no one should deduct anything without your approval?
<span style="margin-left:20em">Yes _____     No_____</span>

<u>By signing below, I ensure all above mentioned items have been discussed with this recruit and I accept responsibility for such.</u>

_____          _____
<span style="margin-left:6em">(Signature of Recruit)</span><span style="margin-left:20em">(Date)</span>

_____          _____
<span style="margin-left:4em">(Signature of Crew Leader/Recruiter)</span><span style="margin-left:14em">(Date)</span>

**EXHIBIT D**
**Pay Rates Task Descriptions and Fines**