UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



KATHLEEN KITTERMAN,
ANNA CRONIN,
CORRIE BALL,
MARVIN BALL,
MARGARET BROGAN, and
EVAN JOSEPH JONES,

        Plaintiffs,

v.

CLAUDIO TOVAR-GUZMAN,
FORTINO GARCIA AND SONS
HARVESTING, INC.,
KUZZENS, INC., d/b/a LIPMAN,
LFC AGRICULTURAL SERVICES, INC.,
d/b/a LIPMAN, and
LFC ENTERPRISES, INC., d/b/a LIPMAN,

        Defendants.

Civil Action No: 2:12cv146
Civil Action No: 2:14cv016

## ORDER

Before the Court is a Motion for Summary Judgment (ECF 128) brought by Defendant Kuzzens, Defendant LFC Agricultural Services Inc. ("LFC-A"), and Defendant LFC Enterprises Inc. ("LFC-E"). These three Defendants assert that there is no genuine dispute as to any material fact regarding the inapplicability of the theory of *respondeat superior* to impose liability upon these Defendants. For the following reasons, the motion for summary judgment is DENIED in part and GRANTED in part.

## FACTUAL BACKGROUND

This case arises out of a motor vehicle accident that occurred on the Eastern Shore of Virginia on July 2, 2011. A bus allegedly owned by Defendant Fortino Garcia and Sons

Harvesting, Inc. ("Fortino Garcia") and driven by Defendant Claudio Tovar-Guzman ("Mr. Guzman") struck a mini-van carrying Plaintiffs.

The night before the accident, two buses left a Kuzzens facility in South Carolina heading to another Kuzzens facility. Mr. Fortino Garcia testified that on the night before the accident he paid someone he had never met before named Victor Sanchez ("Mr. Sanchez") to drive one of the buses. Mr. Guzman accompanied Mr. Sanchez as a passenger to show him where the next facility was located. Mr. Fortino Garcia testified that Mr. Guzman "works for [Mr. Fortino Garcia] in [sic] the farm," and "drives the trucks for him in the fields[.]"

At some point during the journey, Mr. Sanchez left the bus and failed to return. Mr. Guzman then assumed driving responsibilities. Along the way, he struck the mini-van carrying Plaintiffs.

## PROCEDURAL HISTORY

On March 19, 2012, Plaintiffs filed this vehicular tort case pursuant to this Court's diversity jurisdiction. Plaintiffs amended their Complaint on October 18, 2012. Plaintiffs alleged that Defendant Mr. Guzman negligently crashed a bus into the rear of Plaintiffs' van, and that Defendants Fortino Garcia and Kuzzens were liable for this collision. Plaintiffs based their claims on the common law of negligence, the motor vehicle safety provisions of the Virginia Code, the federal Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), and the common-law doctrine of *respondeat superior*.

On January 23, 2013, the Court granted Defendants' partial motions to dismiss. Finding that the AWPA could not provide the basis for a negligence action, the Court dismissed Plaintiffs' claims to the extent to which they relied on the AWPA. The Court also found that Plaintiffs' allegations were insufficient to state a claim based on *respondeat superior*. Because

this deficiency could be remedied by additional allegations, the Court granted Plaintiffs leave to amend their Complaint.

On February 21, 2013, Plaintiffs filed a Second Amended Complaint. This Complaint again attempted to state claims for negligence under AWPA and under the doctrine of *respondeat superior*. On March 6, 2013, Kuzzens moved to dismiss the AWPA and *respondeat superior* claims against it. That motion was granted in part and denied in part. The negligence claim under the AWPA was dismissed with prejudice, but the *respondeat superior* claim survived.

On January 13, 2014, Plaintiffs filed a motion to amend the complaint for a third time, this time adding LFC-A and LFC-E as Defendants. On January 22, 2014, the motion was granted, and the Third Amended Complaint was filed.

LFC-A and LFC-E later filed a Motion for Summary Judgment against four of the six plaintiffs on the basis that the Third Amended Complaint was filed outside the statute of limitations for personal injury claims in Virginia. On November 4, 2014, this Court issued an order granting in part and denying in part the LFC-A and LFC-E Motion for Summary Judgment. That motion was granted as to Plaintiffs Marvin Ball, Margaret Brogan, and Evan Joseph Jones, but denied without prejudice as to Plaintiff Corrie Ball.

Kuzzens, LFC-A, and LFC-E now advance another Motion for Summary Judgment against the remaining Plaintiffs on the grounds that there is no genuine dispute as to any material fact regarding the inapplicability of the theory of *respondeat superior* to impose liability upon these Defendants. The motion is opposed by the Plaintiffs and Respondent United Services Automobile Association ("USAA").

## APPLICABLE LAW

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure ("FRCP") where, on the basis of undisputed facts, the moving party is entitled to judgment as a matter of law. *Hunter Innovations Co. v. Travelers Indem. Co. of Connecticut*, 753 F. Supp. 2d 597, 602 (E.D. Va. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* at 585. Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[G]enuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Guinness PLC v. Ward*, 955 F.2d 875, 883 (4th Cir. 1992) (internal quotation marks and citations omitted). "A 'genuine' issue concerning a 'material' fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor." *Tucker v. Beneficial Mortgage Co.*, 437 F. Supp. 2d 584, 587 (E.D. Va. 2006) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Lastly, "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Tucker*, 437 F. Supp. 2d at 587 (citing *Celotex*, 477 U.S. at 324).

B. RESPONDEAT SUPERIOR

The doctrine of *respondeat superior* allows an employer to be held liable for the negligent actions of another where: (1) the negligent party was the defendant's employee, rather than an independent contractor, *Sanchez v. Medicorp Health Sys.*, 618 S.E.2d 331, 334 (Va. 2005); and (2) the negligent actions "occurred within the scope of the employment relationship." *Butler v. S. States Coop., Inc.*, 620 S.E.2d 768, 773 (Va. 2005).

"The factors which are to be considered when determining whether an individual is an employee or an independent contractor are well established: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual." *McDonald v. Hampton Training Sch. for Nurses*, 486 S.E.2d 299, 301 (Va. 1997). The "determinative" factor is whether the purported employer has the power to exercise control over the means and methods of the purported employee's performance. *Id.*

## ANALYSIS

I. RESPONDEAT SUPERIOR

A. Separate Entities

As a preliminary matter, the Court addresses the fact that Plaintiffs and USAA largely treat Kuzzens, LFC-E, and LFC-A as the same entity. Plaintiffs assert that they are three companies operated by "Lipman." Pls. Br. Opp'n Defs. Mot. Summ. J. at 1-2. At the same time, Plaintiffs assert that Kuzzens and LFC-A are two of twenty-four subsidiaries owned by LFC-E. *Id.* at 2. Similarly, USAA asserts that Kuzzens, LFC-E, and LFC-A are part of a "conglomerate of businesses that make up the farming enterprise known as 'Lipman.'" Resp't USAA's Br. Opp'n Defs. Mot. Summ. J. at 2. Plaintiffs seek to impute the actions of one entity onto the others. *See* Pls. Br. Opp'n Defs. Mot. Summ. J. at 13 (asserting that "it makes little difference

5

which of the Lipman companies are considered the employer, as they are all defendants to this action.").[1]

However, Virginia courts are generally protective of individual corporate entities. *See e.g., Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 669 (Va. 2002). "Generally, courts will observe the separate corporate entity, even though one corporation may dominate or control another, or may treat it as a mere department [or] instrumentality . . . and courts will disregard the separate legal identities of the corporation *only when* one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other." *Id.* (emphasis added) (internal quotation marks omitted).

Plaintiffs and USAA propose that this Court ignore corporate structure by treating these separate entities, brought into the suit individually, as one entity. The Court declines to do so. Neither Plaintiffs nor Respondent USAA presented sufficient evidence that Kuzzens, LFC-A, and LFC-E are operating in an effort to "defeat public convenience, justify wrongs, [or] protect fraud or crime of the other." *See id.* at 669. Therefore, this Court will "observe the separate corporate entit[ies]" involved in this case. *See id.*

B. Employer-Employee Relationships with Defendants LFC-E, LFC-A, and Kuzzens

1. LFC-E

Plaintiffs seek to hold LFC-E liable for the automobile accident because "Kuzzens and LFC-[A] are two of 24 subsidiaries which are each 100% owned by LFC-E." Pls. Br. Opp'n Defs. Mot. Summ. J. at 2. This argument is without merit.

"[U]nder the law of Virginia, an employee of a subsidiary company is not to be treated as an employee of the parent company in the normal parent-subsidiary relationship." *Rivett Grp.,*

---

[1] Plaintiffs provided no authority to support this proposition.

*LLC v. Chelda, Inc.*, 657 F. Supp. 2d 732, 739 (W.D. Va. 2009) (citation omitted). The Virginia Supreme Court has long recognized that

> Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary . . . it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable.

*Eure*, 561 S.E.2d at 669 (internal quotation marks omitted) (quoting *Beale v. Kappa Alpha Order*, 64 S.E.2d at 789 (Va. 1951)).

Therefore, Plaintiffs cannot hold LFC-E liable for the acts of Kuzzens or the acts of LFC-A under the theory of *respondeat superior* solely on the basis that LFC-E owns Kuzzens and LFC-A. *See Rivett*, 657 F. Supp. 2d at 739. Plaintiffs failed to present evidence that "undue domination and control was exercised by the parent corporation over the subsidiary," or that "this control was exercised in such a manner as to defraud and wrong the complainant[.]" *See Eure*, 561 S.E.2d at 669.

Furthermore, Plaintiffs did not provide any evidence that LFC-E "select[ed] or engag[ed]" Mr. Guzman, paid Mr. Guzman, had the power to dismiss Mr. Guzman, or had the power to control Mr. Guzman's work." *See McDonald*, 486 S.E.2d at 301.

For the foregoing reasons, Plaintiffs have failed to show that a genuine issue of material fact exists so as to defeat the motion for summary judgment as it pertains to Plaintiff's attempt to impose liability on LFC-E based upon the theory of *respondeat superior*. *See e.g., Rivett*, 657 F. Supp. 2d at 739; *Eure*, 562 S.E.2d at 669; *McDonald*, 486 S.E.2d at 301. Therefore, with respect to LFC-E, the motion for summary judgment is **GRANTED**. The Court will examine the remaining claims for summary judgment by LFC-A and Kuzzens in turn.

2. LFC-A

To hold LFC-A liable under the doctrine of *respondeat superior*, Plaintiffs first must show that Mr. Guzman was an employee of LFC-A. *See e.g., Sanchez v. Medicorp Health Sys.*, 618 S.E.2d 331, 334 (Va. 2005) ("In Virginia, the doctrine of *respondeat superior* imposes tort liability on an employer for the negligent acts of its employees, *i.e.*, its servants, but not for the negligent acts of an independent contractor."). Plaintiffs have failed to meet this burden.

Fortinia Garcia is an independent contractor. Therefore, LFC-A cannot be held liable for any alleged negligent acts of Fortino Garcia or his employees. *See e.g., McDonald v. Hampton Training Sch. for Nurses*, 486 S.E.2d 299, 300-01 (Va. 1997).

Plaintiffs also failed to present sufficient evidence that LFC-A exerted enough control over the means and methods of Mr. Guzman's work so as to form an employer-employee relationship. *See id.* at 301 ("The 'determinative' factor is whether the purported employer has the power to exercise control over the means and methods of the purported employee's performance.").

*(a) Fortino Garcia is an Independent Contractor*

The doctrine of *respondeat superior* "imposes liability on an employer for the negligent acts of its employees." *McDonald*, 486 S.E.2d at 300. However, if "the negligent acts were performed by an independent contractor rather than an employee, no master-servant relationship exists between the contractor and employer, and the employer is not liable for the negligent acts." *Id.* at 300-01 (citing *Norfolk and Western Ry. Co. v. Johnson*, 154 S.E.2d 134, 137 (Va. 1967)); *see also Schwinn v. Long & Foster Real Estate, Inc.*, 362 F. App'x 357, 359 (4th Cir. 2010) (affirming district court's grant of summary judgment in favor of defendant where district

court concluded that defendant was acting as an independent contractor at the time of the accident); *Sanchez v. Medicorp Health Sys.*, 618 S.E.2d 331, 334 (Va. 2005).[2]

"An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." *S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E.2d 908, 911 (Va. 2004) (internal quotation marks and citation omitted). Whether a person is an employee or an independent contractor is generally a question of fact for the jury. *McDonald*, 486 S.E.2d at 304 (citation omitted). However, "[w]here the evidence admits of only one conclusion, the question is a matter of law[,]" which can be resolved by the Court. *Id.* (citation omitted).

LFC-A and Fortino Garcia have an independent contractor agreement, which provides that Fortino Garcia shall have "complete control, direction and supervision" over the workers while they were working on the properties of LFC-A. Independent Contractor Agreement at 2 ¶ 2.

Neither Plaintiffs nor Respondent-USAA discussed this Independent Contractor Agreement. The terms of the agreement between LFC-A and Fortino Garcia & Sons Harvesting reveal that LFC-A had no power to exercise control over Fortino Garcia & Sons Harvesting or the employees selected by Fortino Garcia to work on LFC-A's farms. *See* Independent Contractor Agreement at 1-2.

A case from the United States District Court for the Western District of Virginia is instructive. *See Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630 (W.D. Va. 2008).

---

[2] Virginia has recognized a few specific exceptions to this general rule, noting that "the doctrine of *respondeat superior* may become applicable, if the independent contractor's torts arise directly out of his use of a dangerous instrumentality, arise out of work that is inherently dangerous, are wrongful *per se*, are a nuisance, or are such that it would in the natural course of events produce injury unless special precautions were taken." *S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E.2d 908, 911 (Va. 2004) (citations omitted). Plaintiffs do not argue that any of these exceptions applies here.

*Jones* involved a motor vehicle accident during which a tractor trailer driver struck another vehicle. *Id.* at 633-34. The driver of the tractor trailer—Arciszewski—died as a result of the crash. *Id.* The injured driver—Jones—brought a personal injury action against the representative of the driver's estate, the corporation that owed the tractor-trailer—AKJ, the owners of that corporation—the Bolars, and a corporation that had a contractual relationship with AKJ—C.H. Robinson Worldwide ("Robinson"). *Id.* at 634.

Jones alleged that AKJ and Arciszewki were agents, servants, or employees of Robinson, and that Robinson was subject to vicarious liability for Arciszewski's negligent driving of the tractor-trailer. *Id.* at 635. Robinson contended, however, that it was not subject to vicarious liability because AKJ and Arciszewski were independent contractors, not employees of Robinson. *Id.*

The court examined the contractual agreement between Robinson and AKJ which contained an "independent contractor" provision and included the following language:

> The parties understand and agree that the relationship of Carrier to Robinson hereunder is solely that of an independent contractor, and that Carrier shall and does employ, retain, or lease on its own behalf all persons operating motor vehicles transporting commodities under this Contract, and such persons are not employees or agents of Robinson or its Customers.

*Id.* at 636.

The plaintiff argued that Robinson nevertheless exercised sufficient control over AKJ and the drivers to create an employer-employee relationship notwithstanding the contract. *See id.* at 636-38.

The court disagreed, and granted a motion for summary judgment in favor of the defendant after finding that the parties entered into a written agreement that "plainly state[ed]" that the relevant party was acting as an independent contractor. *Id.* at 638. The District Court

reiterated that "power of control" is "determinative." *Id.* The court concluded that "Robinson did not exercise a sufficient degree of control over AKJ so as to convert their contractual relationship to one of employer-employee."[3] *Id.*

The court noted that "[t]here is no evidence to indicate that Robinson could terminate a particular driver, or that it asked carriers to do so, or that Robinson controlled the details of the carrier's operations, such as its drivers' schedules during a trip, particular routes, or compensation plans." *Id.* Further, even though "AKJ may have received funds through Robinson's [payment] system," those advance payments on the carrier's fee did "not indicate that Robinson exercised any heightened level of control over AKJ or its operations." *Id.* The court concluded that AKJ was an independent contractor of Robinson, and that, as a result, "Robinson cannot be held liable for the negligence of AKJ or its driver, Arciszewski, under a theory of *respondeat superior*." *Id.*

In the case *sub judice*, Plaintiffs' arguments are similarly foreclosed. Like the plaintiff in *Jones*, Plaintiffs have brought suit against LFC-A, an entity that has an independent contractor agreement with the owner of the bus—Fortino Garcia. It is undisputed that LFC-A entered into an agreement with F. Garcia & Sons Harvesting entitled "Independent Contractor Agreement-Crew Leader Providing Agricultural Services." Defs. Mot. for Summ. J. Ex. 7 at 1 (hereinafter "Independent Contractor Agreement").[4] The title of the contract "clearly demonstrates that the intent of the parties was to establish an independent contractor rather than an employer/employee

---

[3] The court reasoned that although Robinson "arrange[d] pickup dates and times, provided pickup delivery addresses to the carrier, communicated information from the shipper regarding the loading and unloading of cargo, provided other directions regarding the transportation of the load, and required drivers to call in to report the status of shipments[,]" these "activities were directed toward the incidental details required to accomplish the ultimate purpose for which Robinson had been hired"—the "delivery of a load to its proper destination in a timely fashion." *Id.* at 639.

[4] The Independent Contractor Agreement was signed by Fortino Garcia on June 3, 2011 and defines the "Period of Time" for execution of the agreement as July 1, 2011 until November 1, 2011. *Id.* at 12. The accident occurred on July 2, 2011.

11

relationship." *See Hesse v. Ebbets*, No. 1:07CV603LMB, 2007 WL 4562818, at *4 (E.D. Va. Dec. 20, 2007) *aff'd sub nom. Schwinn v. Long & Foster Real Estate, Inc.*, 362 F. App'x 357 (4th Cir. 2010).

Furthermore, several provisions in the contract are similar to those found in *Jones*:

> Contractor [(F. Garcia & Sons Harvesting)] agrees to perform Services for the Principal [(LFC-A)] from time to time as an independent contractor under the terms and conditions set forth in this Agreement. . . . The parties acknowledge that Contractor is an independent contractor and not a joint venture, partner, employee, or agent of the Principal by virtue of this Agreement. The Principal has no control over the manner or method by which Contractor meets Contractor's obligations under this Agreement; provided that Contractor's Services shall be performed in a competent and efficient manner in accordance with current professional standards and in compliance with the policies of the Principal and the terms of this Agreement.

Independent Contractor Agreement at 1; 6.

In a section entitled "Operative Provisions," the following language is found:

> 4. <u>Duty to Perform Services/Control</u>. . . . Contractor [(F. Garcia & Sons Harvesting)] shall have *complete control*, direction and supervision over the hiring and firing of *all workers* provided by Contractor. Contractor shall have *complete control*, direction and supervision of Contractor's labor force while working on the properties of the Principal. Complaints, directions or instructions by the Principal shall be made directly to Contractor or Contractor's duly authorized agent or representative. Contractor shall have *complete control*, direction and supervision over and arrange Contractor's own method of transportation for workers to and from the job. Contractor shall have *complete control*, direct and supervision over the vehicles used by Contractor in the transportation of labor, materials, supplies or equipment. . . . Principal further agrees that *Principal will exercise no control*, direction or supervision over the vehicles used by Contractor in transporting the workers, materials, supplies or equipment with respect to the Services provided hereunder.

*Id.* at 2 ¶ 2 (emphasis added).

Like in *Jones*, the agreement "plainly states" that Fortino Garcia is an independent Contractor. *See Jones*, 558 F. Supp. 2d at 638. Nevertheless, Plaintiffs point out that LFC-A handles employment-related matters for Lipman's migrant employees, such as payroll and

12

human resource activities, and that a Lipman representative would deliver pay checks to the farm laborers.[5] Pls. Br. Opp'n Defs. Mot. Summ. J. at 3; 6. However, the terms of the Independent Contractor Agreement stipulated that LFC-A would pay the workers through its payroll system. The Independent Contractor Agreement contains the following provision:

> Principal's Payroll System. Principal has a computerized payroll system, and as a service to Contractor, is willing to process Contractor's payroll and Contractor has agreed to use Principal's payroll system as provided herein. Principal will be responsible for preparing payroll checks for employees of Contractor, said checks to reflect payroll information supplied by Contractor. Principal will also assume responsibility and, as a service to Contractor, make payments of unemployment insurance, worker's compensation, withholding taxes, social security taxes, and/or deductions of employees of Contractor. Contractor hereby grants Principal the authority to sign payroll checks on behalf of Contractor as a part of the payroll service. As a convenience to Contractor, such payroll checks may be drawn against the accounts of Principal. . . . *It is expressly understood that this payroll service agreement in no way diminishes Contractor's standing as employer or increases Principals' liability under this Agreement*, and is purely a ministerial act on behalf of Principal.

Independent Contractor Agreement at 9-10 (emphasis added).

LFC-A's payments to the workers employed by Fortino Garcia did not transform their contractual relationship into one of employer-employee.

Finally, Plaintiffs contend that the issuance of a "Lipman" identification card to Mr. Guzman supports the notion that LFC-A employed Mr. Guzman. The fact that Mr. Guzman had an identification card issued by a Lipman entity does support the contention that Mr. Guzman was an employee of LFC-A. Even if Mr. Guzman's identification card was issued by LFC-A, LFC-A and Fortino Garcia specifically bargained for identification cards in the Independent Contractor Agreement. The agreement notes that "Principal trains, tests and issues a Principal

---

[5] Plaintiffs also provided a W-4 form for Mr. Guzman from 2005, which listed LFC-A as his then-employer. Pls. Br. Opp'n Mot. Summ. J. at 6 Ex. 8. Mr. Guzman's 2005 W-4 form does not support the assertion that LFC-A employed Mr. Guzman on the date of the accident in 2011.

identification card to the workers. Principal notifies [Contractor] of what, when, and where Services are needed and what time to begin work. . . . [Contractor] shall ensure that all workers present an identification card and scan in and out of a time clock system each work day." *Id.*

### *(b) No Control over Mr. Guzman*

Plaintiffs also failed to present sufficient evidence to suggest that, notwithstanding the independent contractor agreement, LFC-A controlled Mr. Guzman in such a way as to create an employer-employee relationship. *See e.g., McDonald*, 486 S.E.2d 299 at 301 ("The 'determinative' factor is whether the purported employer has the power to exercise control over the means and methods of the purported employee's performance.").

The case of *MacCoy v. Colony House Builders, Inc.*, 387 S.E.2d 760 (Va. 1990) is instructive. In *MacCoy*, the Virginia Supreme Court held that the trial court properly determined that one of the defendants, an electrician, was an independent contractor as a matter of law. *See id.* at 762. After the plaintiffs' house caught fire due to faulty installations, the plaintiffs brought suit against the electrician, Mr. Jones, an entity known as Colony House, and Mr. Sagun, the president of Colony House. *See id.* at 761.

The plaintiffs argued that Mr. Jones was an employee of Colony House, and in support noted the following: (1) Mr. Sagun was present at the job site every day; (2) Mr. Sagun told Mr. Jones where the lighting fixtures, switches, and receptacles for major appliances were to be installed; (3) Mr. Sagun showed Mr. Jones where to install the electrical panel box; (4) Mr. Sagun specified on which of the twenty-two houses Mr. Jones was to work on a particular day, and Mr. Sagun set the completion dates; (5) Mr. Sagun paid for the materials (although Colony House did not file an employee W-2 form with the Internal Revenue Service for monies paid to

Mr. Jones or provide him with any employment benefits); (6) Mr. Sagun informed Mr. Jones of the results of the first inspection. *See id.* at 761-62.

The Virginia Supreme Court concluded that "[n]one of these facts . . . even taken together, would justify an inference that Colony House had the power to control the *means and methods* of Jones' work." *Id.* at 762 (emphasis in original). Mr. Sagun "merely prescribed what the results should be." *Id.* Mr. Jones was "free to adopt and employ the means and methods necessary to accomplish the prescribed results." *Id.* Therefore, the "trial court correctly ruled that Jones was an independent contractor as a matter of law. . . . [R]easonable minds must conclude that Colony House, acting through Sagun, neither had, nor exercised, the power to control the means and methods of Jones' electrical work." *Id.*

Similarly, based on the evidence in the record for the instant case, "reasonable minds must conclude that [LFC-A] . . . neither had, nor exercised, the power to control the means and methods of [Mr. Guzman's] work." *See id.* Fortino Garcia, the owner of Fortino Garcia & Sons Harvesting, testified that "[Mr. Guzman] works for me in [sic] the farm, in the fields. He drives the trucks for me in the fields . . . ." Fortino Garcia Dep. 42:9-10, Feb. 21, 2013 (hereinafter Fortino Garcia Feb. Dep."). Fortino Garcia also testified that the independent contractor agreement included "harvesting tomatoes at times and at far locations as-needed by LFC[-A]." Fortino Garcia Dep. 9:2-5, July 7, 2014 (hereinafter "Fortino Garcia Jul. Dep."). He further testified that "Fortino and Garcia & Sons provide[d] transportation pursuant" to that agreement in 2011.[6] *Id.* at 9:21-24.

Mr. Fortino Garcia "selected" and "engaged" Mr. Guzman. *See id.* at 24 ("I [(Fortino Garcia)] had Guzman with him because he knew where the farm was."); *see also* Resp't USAA

---

[6] Fortino Garcia testified that the buses are owned by Fortino Garcia and Sons Harvesting, and that he obtained liability insurance for the buses. *Id.* at 19:15-17; 22:2-6. He further testified that neither LFC-A, nor LFC-E, nor Kuzzens paid his company to transport the bus from South Carolina to Virginia in 2011. *Id.* at 32-33.

Br. Opp'n Defs. Mot. Summ. J. at 2 ("Fortino Garcia is a *contractor* who *recruits* workers for "Lipman"/LFC-E/LFC-A/Kuzzens.") (emphasis added).

Additionally, as in *Jones*, "[t]here is no evidence to indicate that [LFC-A] could terminate [Mr. Guzman], or that it asked [Fortino Garcia] to do so[.]" *See Jones*, 558 F. Supp. 2d at 639.

In conclusion, Plaintiffs provided insufficient evidence that LFC-A "select[ed] or engag[ed]" Mr. Guzman, paid Mr. Guzman other than as stipulated by the independent contractor agreement, had the power to dismiss Mr. Guzman, or had the power to control Mr. Guzman's work." *See McDonald*, 486 S.E.2d at 301.

For the foregoing reasons, the motion for summary judgment with respect to LFC-A is **GRANTED**.

3. Kuzzens, Inc.

Kuzzens is not a named party on the Independent Contractor Agreement. *See* Independent Contractor Agreement at 1 ¶ 1. Moreover, the alleged employer-employee relationship between Kuzzens and Mr. Guzman is more plausible.

First, Trooper Jeffrey Renas' deposition testimony supports the conclusion that Mr. Guzman worked for Kuzzens: "[D]id [Mr. Guzman] tell you who his employer was? A. He said he was working for Kuzzens. . . . I just remember him telling me he works for Kuzzens." Renas Dep. 18:24-25; 19:1-7, May 16, 2014.

Second, Trooper Renas' deposition testimony supports the conclusion that Mr. Guzman felt pressured to deliver the bus to the Kuzzens farm. Mr. Guzman told Trooper Renas that "he had to get there. He was told to get the bus there. It was needed in the morning." *Id.* at 16:8-9.

16

Third, a Kuzzens employment record for Mr. Guzman notes that he "last worked" on December 3, 2012, nearly a year after the accident. ECF 77-6.

None of these facts conclusively establishes that Mr. Guzman was employed by Kuzzens at the time of the accident in question. However, this evidence "create[s] fair doubt." *Guinness PLC v. Ward*, 955 F.2d 875, 883 (4th Cir. 1992).[7]

With respect to a motion for summary judgment, this Court "must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party." *Matsushita, Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence leaves in doubt the question of whether Mr. Guzman acted within the scope of an employment relationship with Kuzzens. Therefore, the issue must be submitted to the jury. *See Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426, 429 (Va. 2000) ("If the evidence leaves in doubt the question [of] whether the employee acted within the scope of the employment, the issue is to be decided by the jury and not as a matter of law by the trial court.") (citations omitted).

Accordingly, the motion for summary judgment with respect to Kuzzens is **DENIED**.

---

[7] Previously, this Court stated that Mr. Guzman "plainly was in an employment relationship with Kuzzens at the time of the accident." May 7, 2013 Order at 5. This conclusion was based partly on a belief that Kuzzens had conceded the issue of employment. *See id.* However, Kuzzens had not conceded the issue. *See* Kuzzens Br. Mot. Dismiss Second Am. Compl. at 3 n.1. Nevertheless, any potential error in the Court's misstatement was harmless, because the Court would have reached the same result without the misstatement. *See e.g., Lutfi v. United States*, 527 F. App'x 236, 242 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 1767, (2014) *reh'g denied*, 134 S. Ct. 2835 (2014) (finding that an error regarding a motion to dismiss was harmless where "the court would have reached the same result").

<u>Conclusion</u>

For the forgoing reasons, the Motion for Summary Judgment (ECF 128) is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS:** the motion is **GRANTED** with respect to LFC Agricultural Services, Inc. and LFC Enterprises Inc.; the motion is **DENIED** with respect to Kuzzens, Inc.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

Jan. 12th, 2015
Norfolk, Virginia